FILED

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

MAR 10 PM 2:17

U.S. DISTRICT COURT
N.D. OF ALABAMA

CECILE B. HALLMAN,           }

      Plaintiff,         }

v.                      }        **CASE NO. CV 97-B-2537-NW**

REYNOLDS METALS COMPANY,    }

      Defendant.       }

**ENTERED**

MAR 1 0 2000

## MEMORANDUM OPINION



Currently before the Court is the Motion for Summary Judgment and Motion (A) for Confirmation of the Effect of Order Entered March 31, 1999 or (B) to Reinstate Paragraph 18 of the Affidavit filed by defendant Reynolds Metals Company ("defendant" or "Reynolds"), and the Motion to Strike Supplemental Out of Time Submissions by Defendant filed by plaintiff Cecile Hallman ("plaintiff" or "Hallman"). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that the defendant's motions are due to be granted and the plaintiff's motion is due to be denied.

### I. FACTUAL SUMMARY

**A.    Hallman's Employment with Reynolds**

Hallman's employment with Reynolds began in November 1968 as a clerk in the Personnel Department at the Reduction Plant, which was closed before the events in question in this case. (Hallman Dep. at 22-23, 70-71, attached as Ex. A. to Def.'s Evid. Sub. in Supp. of Mot. Summ. J.) She thereafter held various clerical jobs, including Accounting Clerk at Southern Reclamation Company ("SRC," a subsidiary of Reynolds) and then Accounting Clerk at the Alabama Reclamation Plant ("ARP") from 1986 to 1996. (*Id.* at 23-25, 28, 33-47.) She

transferred from SRC to ARP in 1986 because of the more attractive pay and benefits at ARP as compared to SRC. (*Id.* at 42.) Before transferring to ARP, she trained Sylvia Kidd to succeed her in the Accounting Clerk job at SRC. (*Id.* at 40-41.)

## B.   Plant Consolidation

On July 1, 1996, Reynolds consolidated three plants in Listerhill, Alabama, the Alloys Plant (which is the producing plant), ARP and SRC (which recycle scrap into raw materials for use by Alloys). (Hester Aff. ¶ 3, attached as Ex. C to Def.'s Evid. Sub.) Since then, the consolidated plants have been collectively known as the "Alloys Complex." (Glasscock Dep. at 11-12, attached as Ex. E to Def.'s Evid. Sub.)[1]

Prior to consolidation, the plants were considered separate facilities, each having its own Accounting Department. (Hester Aff. ¶ 3.) The Accounting Departments were headed by Controllers Sam Glasscock (47 years old) at Alloys, Melissa Johnson (38) at ARP, and Dave Downing (47) at SRC. The Accounting Departments at ARP and SRC were closed in the consolidation. (*Id.* at ¶¶ 6 and 13(b).)

ARP's Accounting Department was staffed by the following:

| | |
|---|---|
| Controller: | Melissa Johnson (38 years old) |
| Accountants: | Wallace Hannon (52)<br>Shirley Thompson (36)<br>Joel Peeden (49) |
| Accounting Clerks: | Cecile Hallman (56)<br>Lydia Morris (37) |

(*Id.* at ¶ 7.)

---

[1]SRC subsequently closed in 1998. (Glasscock Dep. at ¶ 12.) There is no contention that SRC's closing in 1998 has any relevance to this case.

ARP Controller Melissa Johnson remained employed for the consolidated Accounting Department at the Alloys Complex, as did SRC Controller Dave Downing. (Glasscock Dep. at 35; Hester Aff. ¶ 6.) Otherwise, the closing of ARP's Accounting Department resulted in the reduction in force of everyone in the department. (Hallman Dep. at 74-75; Hester Aff. ¶ 6.)

**C.     Transfer of ARP's Accounting Functions to Richmond**

Beginning in 1991, the Alloys plant's general accounting functions were transferred to Reynolds's home office in Richmond, Virginia. (Glasscock Dep. at 18-20.) With the consolidation of ARP, SRC and the Alloys plant in 1996, it was a "natural fit" for ARP's and SRC's general accounting functions similarly to be moved to Richmond. (Glasscock Dep. at 19.) Hallman agrees that most of the accounting functions which had been performed by ARP's Accounting Department were transferred to Richmond in connection with the 1996 consolidation. (Hallman Dep. at 71.)

**D.     Clerical Job in the Consolidated Alloys Accounting Department**

By 1996, Sylvia Kidd was team leader at SRC with four clericals reporting to her. (Glasscock Dep. at 31-32.) She was described as an "expert" in Reynolds's universal or generic accounting systems and trained employees at Reynolds facilities outside Alabama in those accounting systems. (*Id.* at 30, 93-94.)

A clerical job was established in the consolidated Accounting Department. (*Id.* at 34-35.) For that job, Glasscock asked Johnson and Downing to rank their employees. The result was that "Sylvia Kidd was the first name, and Cecile Hallman was the second." (*Id.* at 29.) Kidd was selected for the job.

E.    **Reductions**

1.    *Early Retirement Offers*

Before the RIF, Reynolds offered an early retirement option to employees who were

(1) eligible for retirement, and (2) would not be terminated in a RIF.  The purpose of the early

retirement plan was to avoid or minimize involuntary RIFs.  (Hester Dep. at 22-23; 72-73; Hester

Aff. ¶ 14.)  Because the early retirement plan would enable Reynolds to reduce or avoid

involuntary RIFs, those electing it received severance pay which retirees would not otherwise

receive.  (Glasscock Dep. at 72.)  A total of 16 employees elected that offer.  (Hester Aff. ¶

16(b).)

2.    *Involuntary RIF*

The remaining reductions came through the involuntary RIF of 18 employees, including

everyone in the ARP Accounting Department except Controller Melissa Johnson.  (Hester Aff.

¶¶ 6 and 16(c).)  The average age of those 18 employees was 45.3889, compared to the average

age of the salaried workforce of 47.6603.  (*Id.* at ¶ 17.)

F.    **Hallman's RIF and Retirement**

Accompanied by a Personnel Representative, Sam Glasscock came to ARP on June 27,

1996 "to tell everybody in the accounting department [in individual sessions] that their services

were no longer needed, except for Mrs. Johnson."  (Hallman Dep. at 89; Def.'s Ex. 3 to Hallman

Dep., attached as Ex. B to Def.'s Evid. Sub.)  Hallman was told she was reduced in force because

"my job had been eliminated."  (Hallman Dep. at 89.)

She continued to work through July 31, 1996.  (*Id.* at 97.)  She received severance pay

and retired on September 1, 1996.  (*Id.* at 81-82.)  Because the Accounting Department at ARP

4

had closed and because of a "department closing" provision in the retirement plan, there was no penalty for early retirement.  (*Id.* at 84.)  She has been employed with the Sheffield Board of Education since September 1996. (*Id.* at 7.)

**G.    Employees Retained Challenged by Hallman**

In addition to Sylvia Kidd, Hallman also challenges the retention of six other employees, whose jobs and plants before and after the consolidation were as follows:[2]

| Name | Age | Before | After |
|------|-----|--------|-------|
| Rosie McAfee | 53 | Storeroom Clerk-ARP | Same/Same |
| Gloria Thompson | 46 | Production Control Clerk-ARP | Same/Same |
| Ann Burt | 46 | Buyer-ARP | Buyer-Alloys |
| Elaine Powers | 50 | Insurance Clerk-ARP | Insurance Clerk-Alloys |
| Faye Sanders | 46 | Administrative Assistant Personnel-SRC | Administrative Assistant Personnel-Alloys |
| Mary Ann Thomason | 48 | Personnel Clerk-ARP | Personnel Clerk-SRC |

(Hallman Dep. at 116; Hester Aff. ¶¶ 10-11 and Ex. C.)

Rosie McAfee (53 years old) and Gloria Thompson (46) remained in their same jobs at the same plants.  (Hallman Dep. at 133, 135; Hester Aff. ¶ 12(a).)  The remaining four who transferred to other plants retained the same titles, although their positions "were re-defined, expanded or transferred to meet the business requirements of the new complex." (Hester letter re: EEOC Charge, attached as Ex. 12 to Pl.'s Evid. Sub. in Opp. to Mot. Summ. J.)

---

[2]While Hallman's testimony named a seventh employee, (Hallman Dep. at 152-153), that one has been withdrawn from contention by her submissions to the court.

## II. ANALYSIS

**A.    Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**B.    Hallman's Claim Regarding Sylvia Kidd's New Position**

Plaintiff contends that her position was not eliminated. She contends that the position that Sylvia Kidd was awarded in the consolidated Accounting Department was the functional

6

equivalent of plaintiff's position at ARP. Consequently, plaintiff contends that Reynolds discriminated against her because of her age when it awarded the position to Kidd.

The Eleventh Circuit has adopted a variant of the *McDonnell-Douglas* test for reduction-in-force cases involving circumstantial evidence. A plaintiff in a job-reduction case can establish a prima facie case by demonstrating (1) that she was in a protected age group and was adversely affected by an employment decision; (2) that she was qualified for her current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue. *Earley v. Champion*, 907 F. 2d 1077, 1082 (11th Cir. 1990).

As to the second element of the prima facie case, where a particular job is entirely eliminated, for a plaintiff to prevail against her employer, she must show that she was qualified for another available job with that employer. *Id.* at 1082-83. Qualification for her current position is not enough. *Id.* at 1083. However, "where a plaintiff contends that his position has been consolidated or reassigned to other employees, as has been alleged in this case, he may establish a prima facie case by demonstrating that he was qualified for his current position *or* to assume another position of the time of discharge." *Williams v. Vitro Services Corp.*, 144 F.3d 1438, 1442 (11th Cir. 1998).

As to the third element of the prima facie case, where a job for which the plaintiff is qualified is available at the time of the termination, and the employer offers the job to an individual outside the protected age group, an inference of discrimination is permissible. *Jameson v. Arrow Co.*, 75 F. 3d 1528, 1532 (11th Cir. 1996). At this stage of the analysis, the burden on the plaintiff has been described as *de minimus*. *Id.* at 1533 n. 2.

7

Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer, who must articulate at least one legitimate, nondiscriminatory reason for discharging the plaintiff. *Watkins v. Sverdrup Technology, Inc.*, 153 F. 3d 1308, 1314 (11th Cir. 1998). The employer's burden is production, not persuasion; the ultimate burden of persuasion remains at all times with the plaintiff. *Id.* (quotations and citations omitted).

Consequently, once the employer produces legitimate, nondiscriminatory reasons, the "plaintiff's ensuing 'burden of proving [that the employer's proffered explanation is pretextual] merges with the plaintiff's ultimate burden of proving that age was a determining factor in his discharge, and it can be met by showing that a discriminating reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation.'" *Id.* (quoting *Clark v. Coats & Clark, Inc.*, 990 F. 2d 1217, 1228 11th Cir. 1993)) (alterations in original). "Under the latter approach, plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reasons for its action that a reasonable factfinder could find [all of those reasons] unworthy of credence.'" *Id.* (quoting *Combs v. Plantations Patterns*, 106 F. 3d 1519, 1538 (11th Cir. 1997)) (alterations in original).

### 1.    *Prima Facie Case*

As to the first element of the prima facie case, plaintiff has shown that she was in a protected age group and was adversely affected by an employment decision. Under dispute in this case is the second element, Hallman's qualifications for her position or another position available at the time of discharge. Hallman contends that Sylvia Kidd's position in the consolidated Accounting Department is equivalent to Hallman's position with ARP. As noted, if

Hallman can show that her position was consolidated or reassigned to Kidd, she may establish a prima facie case by demonstrating that she was qualified for her previous position. If not, Hallman must show that she was qualified for the new position.

Defendants argue that there is no genuine issue of material fact that (1) plaintiff's position was eliminated; and (2) Hallman was not qualified for Kidd's position. The following evidence is undisputed:

- When the clerical job was established in the consolidated Accounting Department, Glasscock asked Johnson and Downing to rank their employees. The result was that the top two names were Sylvia Kidd followed by Cecile Hallman. (Glasscock Dep. at 29.)

- A comparison of Hallman's pre-1996 job description as Accounts Payable/Freight Clerk with Kidd's 1997 performance appraisal establishes that Kidd is performing some, but not all, of the same functions that Hallman was performing before the RIF. (*Compare* Ex. 6, attached to Pl.'s Evid. Sub. *with* Ex. 8, attached to Pl.'s Evid. Sub.)

- Glasscock testified as follows:

> Q. Was Ms. Hallman qualified for the job filled by Sylvia Kidd?
>
> A. I think she would have been qualifiable.
>
> Q. What do you mean by qualifiable?
>
> A. I think there would have to have been some training done for her to be qualified, specifically in the area that Sylvia was training others in the use of our generic accounting system.

(Glasscock Dep. at 63.) A reasonable inference would be that Hallman was qualifiable because she could already perform duties other than training personnel.

9

The plaintiff and defendant dispute whether Hallman's previous position was eliminated, or merely consolidated into Kidd's. Viewing the evidence and drawing reasonable inferences favorable to the plaintiff, this court finds that there is no genuine issue of material fact as to whether Hallman's position was eliminated. Her position was eliminated, with some duties going to Kidd's position and other duties transferred to Richmond. Consequently, in order to establish the second element of the prima facie case, Hallman cannot just show that she was qualified for her former position; she must show that she was qualified for the new position.

Although it is a close call, the court is of the opinion that a genuine issue of material fact exists as to whether Hallman was independently qualified for Kidd's position. The second-place ranking of her by Downing and Johnson, combined with Glasscock's "qualifiable" testimony, is enough evidence for plaintiff to meet her *de minimus* burden at this stage of the *McDonnell-Douglas* formula.

Based on this analysis, under Eleventh Circuit precedent, plaintiff has also established the final element of the prima facie case, that evidence exists by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue. *Jameson*, 75 F.3d at 1532 ("where a job for which the plaintiff is qualified, and for which the plaintiff applies, is available at the time of termination, and the employer offers the job to an individual outside the protected age group, an inference of intentional discrimination is permissible").

### 2.   *Legitimate, Nondiscriminatory Reason*

Defendant contends, and offers testimony and evidence in support of its contention, that Kidd was more qualified for the consolidated position. Defendant specifically notes Kidd's

10

ability to provide company-wide training in universal accounting systems. Thus, defendant has met its burden of producing a legitimate, nondiscriminatory reason for choosing Kidd. *Cummins v. Lobdell Emery Manufacturing Co.*, 1994 WL 622142, at *2 (7th Cir. 1994) ("Defendant believed that other employees [retained or recalled in a RIF] were more flexible or versatile than plaintiff. This is a legitimate business decision, and nothing in the record indicates the decision to be based on age.").

### 3.    *Pretext*

Hallman sets forth several arguments that Reynolds's proffered reason is pretext for unlawful discrimination.

#### a.    The proffered reason is "not true"

Plaintiff argues that Kidd's expertise in universal accounting systems is "not true" because "there is no mention in Kidd's job description of any training duties." The evidence does not support plaintiff's argument.

Kidd's employee background data in connection with her job description specifically states, "I have been asked by the Controller's staff to train others, at other locations on the AS400 Generic System." (Employee Background Data Form dated April 18, 1996, attached as Ex. 5 to Pl.'s Evid. Sub.)

Moreover, the Eleventh Circuit has stated that the "controlling factor" consists of "job content – the actual duties that the respective employees are called upon to perform. Job descriptions prepared by the employer may or may not fairly describe job content." *Hodgson v. Brookhaven General Hospital*, 436 F.2d 719, 724 (5th Cir. 1970) (citing Equal Pay Act regulations). In this case, then, the "controlling factor" is the undisputed evidence that Kidd was

11

providing company-wide training both before and after the consolidation. (Glasscock Dep. at 30, 93-94.)

> This reason is confirmed by notes prepared by Sam Glasscock in 1996, which state:

> Her knowledge of and functions performed spread over cost accounting, production reporting, payroll, general accounting, and generic systems.  Her knowledge demonstrated is superior.  The cost accounting & production reporting review parts of her job are retained.  Payroll and general accounting functions will be removed from her responsibilities.  <u>She will still continue to be used as a trainer for corporate generic systems.</u>  (emphasis added).

(Glasscock Notes, attached as Ex. F to Def.'s Evid. Sub.)

Thus, as to her contention that Reynolds's proffered reason was not true, plaintiff has not put forth evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

### b.     The proffered reason is "irrelevant"

Plaintiff contends that even if it is true, the proffered reason is irrelevant because "Glasscock testified she might provide training twice a year, making it apparent that if it is, in fact, one of Kidd's job duties, it is not a major one."  However, the actual testimony was not "twice a year," but rather that "[i]t's not something she does every week, of course, maybe twice in the last year."  (Glasscock Dep. at 93-94.)

Giving Hallman the benefit of the inference that the training has been carried out by Kidd "twice a year" as distinguished from "twice in the last year," the Eleventh Circuit has held that the frequency with which a task is performed is not an accurate measure of importance or value to an employer.  *See Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1527 (11th Cir. 1997)

(rejecting contention by ADA plaintiff that the type of work he could not perform was non-essential because it occurs only rarely).

Moreover, this court's analysis is based on the perception of relative qualifications at the time the decision was made. Glasscock testified that at the time the decision was made, Downing and Johnson ranked Kidd higher than Hallman because of Kidd's proficiency and ability to train others in the universal systems. (Glasscock Dep. at 29-30.) The actual amount of training performed after the decision is not relevant to this analysis. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 n.3 (11th Cir. 1991) (holding that plaintiff cannot rely on matters not known to defendant when the decision was made).

Thus, as to her contention that Reynolds's proffered reason was irrelevant, plaintiff has not put forth evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

### c.    Hallman's training experience

Plaintiff contends that the proffered reasons are pretextual because she could also train others on the universal systems. Plaintiff's contention is based on the fact that before moving from SRC to ARP in 1986, Hallman trained Kidd on the Accounting Clerk job at SRC. Hallman's testimony merely proves that she was capable of training another employee in the Accounting Clerk job, not in the universal or generic accounting systems. Indeed, plaintiff testified that, unlike Sylvia Kidd, she could not recall performing any training outside the three plants (Alloys, SRC and ARP). (Hallman Dep. at 159.)

Plaintiff has presented no evidence that she was qualified in the universal accounting systems or could provide company-wide training in the universal accounting systems. Thus, as

13

to her contention that she was qualified to give training, plaintiff has not put forth evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

### d. Inconsistencies in the answer to the EEOC Charge

Hallman contends that the EEOC response submitted by Reynolds is contradicted by subsequent testimony. In particular, plaintiff cites to Reynolds's statements in the EEOC response that (1) her performance was not an issue; and (2) only two accounting positions were available.

Hallman's EEOC Charge was filed in December 1996. (Ex. B attached to Def.'s Evid. Sub.) Reynolds answered the Charge in March 1997, through Dolores Carrington in Equal Opportunity Affairs in the Richmond home office, with information provided by Personnel Representative Larry Hester at the Alloys Plant. (EEOC Response, attached as Ex. 3 to Pl.'s Evid Sub.; Hester Dep. at 13-14.)

#### i. *"Performance was not an issue"*

Reynolds's answer to the Charge said "Ms. Hallman was a good employee. Therefore, her performance or attendance is not at issue in this matter." (EEOC Response at 2.) Hallman argues that Alloys Controller Sam Glasscock testified to the contrary that her RIF was based on performance.

The court cannot agree that any inconsistency exists. Glasscock's testimony on the subject is entirely consistent with the answer to the Charge, as he testified that "[i]n this particular case, [performance] was not an issue." (Glasscock Dep. at 63.) His testimony regarding Kidd's expertise with the universal accounting systems and in providing training in

14

them plainly related not to "performance" but to the point that Kidd was regarded as more versatile.

ii.    <i>"Only two new positions available"</i>

Hallman's EEOC Charge alleged in relevant part that:

> I was not given the opportunity to be placed in another position in order that I could work for approximately two more years so that I could receive full retirement benefits. I was qualified for numerous other positions with Reynolds Metals Company but those positions were given to employees with less years of service and less experience than me and who were not in a protected category regarding age.

(EEOC Charge, attached as Ex. B to Def.'s Evid. Sub.)

The answer replied that the ARP and SRC Controllers (Melissa Johnson and Dave Downing) had been retained and, in response to the allegation in question, stated that "[t]his allegation is false. In fact, there were no other positions at the plant for which Ms. Hallman was qualified. As mentioned above, the only two new positions available required far more experience than Ms. Hallman had." (EEOC Resp. at 2.)

Hallman is correct in pointing out that the last sentence is inconsistent with the existence of the position in the consolidated Accounting Department for which Sylvia Kidd was selected. A close examination of the Charge, however, reveals a broadscale averment saying nothing about any clerical job in the consolidated Accounting Department or about Kidd. Had the Charge placed Reynolds on notice that plaintiff was complaining about the job for which Kidd was selected, Hallman's contention regarding the answer would have more force. The Charge, however, was broad in nature, necessarily inviting imprecise response.

15

This is not a case of inconsistency, but rather of the Charge and the answer passing like ships in the night.  The EEOC response contained the blanket statement that "there were no other positions at the plant for which Ms. Hallman was qualified."  Whether there were two or three new positions available is a minor point.  Such miscommunication does not reach the level of pretext.  *Tidwell v. Carter Products*, 135 F.3d 1422, 1427-1428 (11th Cir. 1998) (rejecting plaintiff's contention that the EEOC's determination that "performance" was a reason for the discharge was inconsistent with defendant's argument that realignment was the reason because "the existence of a possible additional non-discriminatory basis for [plaintiff's] termination does not, however, prove pretext.").

*iii.      Conclusion*

Thus, as to her contention that Reynolds's EEOC response contained inconsistencies, plaintiff has not put forth evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

**e.      Salaries**

Plaintiff contends that because she was paid $40 a month more than Kidd, she was reduced in force in order to save money.  Because use of economic factors in a RIF is not unlawful, this argument is without merit.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) ("there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."); *Broaddus v. Florida Power Corp.*, 145 F.3d 1283, 1287 (11th Cir. 1998) ("The ADEA does not prohibit an employer from making an employment

decision on the basis of higher salaries, increased benefits, pension status, or claims for medical expenses, even though those characteristics are often correlated with an employee's age.").

In the alternative, plaintiff argues that Hester testified that salary was a factor in the RIF. This statement, she contends, is contradicted by (1) Kidd's having received a salary increase in April 1998, and (2) Glasscock's statement that salaries played no role in the RIF, (Glasscock Dep. at 60). According to plaintiff, such contradictions are evidence of pretext. The court finds this argument unpersuasive.

First, the passage of Larry Hester's testimony referred to by Hallman fails to disclose any such assertion by him. He stated that an employee's "Hay grade" (a category indicating salary range) was not a factor in filling vacant positions. (Hester Dep. at 64-65.) He conceded, however, that the Hay grade is "a factor with any type of fill-in position." (*Id.* at 65.) There is no evidence or contention that Kidd's selection had anything to do with "any type of fill-in position."

Second, there is no evidence or contention that Reynolds planned in 1996 to increase Kidd's salary in 1998 (or at any time in the future). Consequently, any argument that Kidd's future salary reveals inconsistencies is foreclosed by *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 n.3 (11th Cir. 1991) (holding that plaintiff cannot rely on matters not known to defendant when the decision was made).

Thus, as to her contentions regarding the role of salaries in the RIF, plaintiff has not put forth evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

17

### f.      Comparison table

Hallman has submitted a table of her qualifications as compared to Kidd's as evidence that the articulated reason for retaining Kidd "is a sham." The court does not find this comparison table persuasive.

First, the primary articulated reason for retaining Kidd is her expertise in the universal accounting systems and concomitant ability to provide company-wide training in them. (Glasscock Dep. at 29-30.) These qualifications are omitted from Hallman's comparison table.

Second, Hallman's comparison table relies on her length of service. Hallman admits however, that she does not recall anyone saying that length of service would be a determining factor in a RIF among salaried employees. (Hallman Dep. at 187-188.) Indeed, the RIF decision-maker, Sam Glasscock, testified that "[w]hat we did when we decided who to retain is we looked at the jobs that we had, and we decided who we thought was the most qualified for those jobs. That was the deciding factor was who was the most qualified for the job, in our opinion." (Glasscock Dep. at 62-63.)

As stated in controlling precedent, "seniority and age discrimination are unrelated. . . . . the seniority a given plaintiff has accumulated entitles him to no better or worse treatment in an age discrimination suit." *Williams v. General Motors Corp.*, 656 F.2d 120, 130 n.17 (5th Cir. Unit B 1981).

Third, the comparison table relies on the variety of jobs plaintiff had held, coupled with the fact that she was without dispute "a good employee." But there is neither evidence nor argument that the jobs she had held related to the type of work in which Kidd has expertise. Moreover, "the essence of a RIF is that competent employees who in more prosperous times

18

would continue and flourish at a company may nevertheless have to be fired." *Earley*, 907 F.2d

at 1083 (quotations and citation omitted); *see also Matthews v. Commonwealth Edison Co.*, 128

F.3d 1194, 1196 (7th Cir. 1997) (citing *Earley* in observing that in a RIF, "the employer must

decide which qualified workers to retain; he can't retain them all.").

Thus, as to plaintiff's contentions regarding her qualifications as compared to Kidd's,

plaintiff has not put forth evidence from which a reasonable fact finder could conclude that

Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based

on age.

### g.    Statistics

Hallman contends she has presented "statistical evidence of pretext" in that (a) the

average age of the 34 employees (16 early retirements and 18 RIFs) was 51.9 and that (b) 32 or

91.5% of them were in the protected classes of age and/or disability.[3]  Hallman's statistics are

deficient in several respects.

First, the assertion that "the average age of the employees reduced in force was 51.9"

includes the 16 employees who elected the early retirement offer.  Hallman's claim, however,

relates to her involuntary RIF, not the early retirement plan.  Regardless, as the Eleventh Circuit

has stated, "to accomplish a RIF by . . . voluntary, early retirement is lawful." *Earley*, 907 F.2d

at 1082.  Consequently, inclusion of the early retirement figures is misleading.

---

[3] A total of 34 employees were eliminated from the active payroll in connection with the plant consolidation, 16 through early retirement and 18 through the reduction in force. (Hester Aff. ¶ 16 and Ex. D.)  There was also one disability retirement in June 1996, but since it "was not connected to the plant consolidation," it is excluded from consideration. (*Id.* at ¶ 16(a).)

Second, the assertion that 91.5% of the 34 employees were in the protected categories of age and/or disability is irrelevant to the court's analysis. It again includes the 16 employees electing early retirement, which is inconsistent with *Earley*, 907 F.2d at 1082. Further, there is no claim that Hallman has any disability. On the contrary, her testimony is that "for my age, I feel great." (Hallman Dep. at 158.) Hallman's data, then, is skewed by the statistics regarding alleged disabilities. *Box v. A&P Tea Co.*, 772 F.2d 1372, 1379-1380 (7th Cir. 1985) (promotion statistics "fail to create a genuine issue of fact whether the reason given for [plaintiff's] discharge was a pretext."); *Baltazar v. Board of Education*, 1990 WL 71381, at *4 (D.Md. 1990) (plaintiff's "statistical evidence is legally deficient" because, *inter alia*, "[s]tatistical evidence concerning African-American employees is irrelevant. [Plaintiff] is not a member of this group.").

Third, plaintiff omits statistics regarding the remaining workforce. Reynolds has offered evidence that the average age of the 18 reduced-in-force employees was 45.3889, compared to the average age of the salaried workforce of 47.6603. (Hester Aff. at ¶ 17.) These statistics are supplemented by evidence that defendant retained scores of employees over forty years of age. (Alloys Complex Roster dated July 18, 1996, attached as Ex. 2 to Pl.'s Evid. Sub.) Plaintiff's omission of such relevant figures renders her statistics incomplete. *See Watkins v. Sverdrup Technology, Inc.*, 153 F.3d 1308, 1315 (11th Cir. 1998) (holding that plaintiff's statistical data was incomplete because "[n]oticeably absent from Watkin's mathematical observations, however, was the fact that TEAS retained scores of employees well over forty years-of-age after the RIF").

20

Thus, plaintiff's statistical data does not constitute sufficient evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

### h.    Alleged ageist comment

Plaintiff contends that Reynolds's CEO made an ageist comment.  This argument is based on a March 25, 1998, Richmond newspaper article reporting a talk by Reynolds's CEO Jeremiah Sheehan to students at the University of Richmond.  The article includes the following:

> When a student asked the best way to encourage change in an old company, Sheehan joked, "Get rid of the old people and start all over again."
>
> He quickly added, "But that isn't going to happen."

(Ex. 21 attached to Pl.'s Evid. Sub.)[4]  The court disagrees with plaintiff's contention that this statement is evidence of pretext.

Reynolds contends that the reference was to employees of the "old company" and not to their age.  *See Davis v. First National Bank of Killeen,* 976 F.2d 944, 950 (5th Cir. 1992) ("the jury heard repeated references to the pre-acquisition employees as the 'old' employees . . . the jury may well have become confused – possibly by design of counsel – in thinking the reference was one to chronological age, not merely to preacquisition employment.").  Even if the comment referred to chronologically older employees, the court cannot agree that it is evidence of pretext.  Age-negative comments that fall below the standard required for direct evidence, as does this one, can take an ADEA plaintiff through the summary judgment threshold.  *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987) (not moving plaintiff to another job raised an issue for

---

[4]Although newspaper articles are indisputably hearsay, the court will assume the truthfulness and accuracy of the article for purposes of this analysis.

trial "[w]hen coupled with the age-related comments allegedly made by the supervisors"). It is equally settled law, however, that "[t]he biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." *Holifield v. Reno*, 115 F.3d 1555, 1563-1564 (11th Cir. 1997) (quotations and citation omitted); *Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir. 1987) ("It is undisputed, however, that [the speaker] played no part in the decision to terminate the plaintiff.").

In this case, there is neither evidence nor contention that CEO Sheehan made or influenced any decision regarding the RIF at issue. On the contrary, the evidence is that he was not the CEO in the Summer of 1996 and that "I never heard anything to suggest that he had any role in selecting anyone to be retained or not retained in the RIF resulting from the plant consolidation in the Summer of 1996." (Hester Aff. ¶ 18.)[5]

Thus, as to plaintiff's contentions regarding the alleged ageist comment, the court finds that this comment does not constitute sufficient evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

---

[5]Hallman moved to strike this paragraph of Hester's affidavit, and, based on agreement of the parties, the court granted the motion. Now that plaintiff has set forth its argument regarding this newspaper article, defendant moves the court to reinstate the paragraph. (Def.'s Motion (A) for Confirmation of the Effect of Order Entered March 31, 1999 or (B) to Reinstate Paragraph 18 of Affidavit.) As the court noted at oral argument, plaintiff cannot on the one hand rely on the comment reported in the Richmond newspaper and on the other hand preclude Reynolds from responding to it. The court thus finds defendant's motion is due to be granted and paragraph 18 is reinstated.

### i.     Failure to conduct an adverse impact study

Plaintiff contends that because Reynolds did not perform an adverse impact study pursuant to its Affirmative Action Plan examining the effects of the RIF on older workers, its proffered reason is pretext for discrimination. The court disagrees.

Hester testified that Reynolds did not undertake an adverse impact study at the time the RIF occurred. (Hester Dep. at 45-48.) However, Hester testified that the adverse impact study was performed as scheduled after the RIF, the results were reported to Richmond, and "[t]o the best of my recollection, it did not indicate an adverse impact." (*Id.*) Reynolds's decision to perform a study after the RIF, instead of during the RIF, does not constitute sufficient evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

### j.     Hiring younger employees

Plaintiff contends that after the RIF, Reynolds hired younger employees, illustrating that its proffered reason is pretext for age discrimination. The court disagrees.

Plaintiff notes that Kristy Olive (23 years old) was hired on September 30, 1996. She has a B.S. degree in Industrial Hygiene and General Chemistry and was hired as an Industrial Hygienist. (Ex. 10 ¶ 6(b) and Ex. B thereto, attached to Pl.'s Evid. Sub.) Plaintiff also notes that three employees are listed on the consolidated Alloys roster as having zero years service, indicating that they were new hires. Their jobs are Cold Roll Supervisor (D.C. McCoy, 31), Senior Maintenance Technical Engineer (T.M. Perry, 43), and Environmental Control Manager (T.J. Truitt, 31). (Ex. 2 at 6,7 and 9, attached to Pl's Evid. Sub.)

23

There is no evidence or contention that Hallman was qualified for or interested in the Industrial Hygienist, Cold Roll Supervisor, Senior Maintenance Technical Engineer, or Environmental Control Manager positions.  Consequently, this proffered evidence appears irrelevant to plaintiff's claims.  *See Watkins*, 153 F.3d at 1315 ("The most fatal shortcoming, though, was that . . . plaintiffs did not identify any new employees similarly situated to themselves.").

Even if the court were to take this as some trend that Reynolds was hiring younger employees after the RIF, there is no evidence that this was Reynolds's intention at the time of the RIF.  Indeed, there is no evidence that any of the latter three jobs were available at the time the RIF occurred.  *Earley*, 907 F.2d at 1083 ("Nothing shows that these positions were open at the right time:  they were open either well before the time of plaintiffs' termination or several months after their termination.").

Consequently, the court finds that Reynolds's decision to fill these positions with younger employees does not constitute sufficient evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

### k.      **Hiring temporary employees**

Hallman contends it is evidence of pretext that Reynolds did not consider RIFed employees for temporary positions.  The court finds this argument unpersuasive.  First, with one exception (not Hallman), no RIFed employees expressed interest in temporary work.  (Hester Dep. at 70.)  Second, there is no evidence that any temporary worker was needed at the time of the RIF.  Third, Hallman's testimony regarding the positions in which she says she should have

24

been placed does not mention any temporary position. Finally, there is no evidence that any temporary worker was performing any work for which Hallman might have been qualified for or in which she might have been interested.

Consequently, the court finds that any decision by Reynolds to use temporary workers does not constitute sufficient evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

### l.     Conclusion

In essence, plaintiff is arguing that she should have been chosen for the consolidated clerical accounting position instead of Sylvia Kidd. However, the court finds that plaintiff's evidence, taken separately or collectively, is insufficient evidence from which a reasonable fact finder could conclude that the defendant's proffered reason for selecting Kidd instead of the plaintiff is pretext for unlawful discrimination based on the plaintiff's age.

### C.    Hallman's Claims Regarding the Six Other Positions

Plaintiff contends that because she was qualified for six other positions at the consolidated Alloys Complex, the defendant's proffered reason is pretext for unlawful discrimination. It does not appear from plaintiff's opposition that she is contending that the placement of six other employees in these positions constitutes six separate counts of discrimination. The court, however, has nonetheless subjected each relevant position to the RIF ADEA analysis. For the reasons discussed below the court finds that the placement of other employees in these six positions does not constitute sufficient evidence from which a reasonable

fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

Hallman challenges the retention of Rosie McAfee (53 years old) as Storeroom Clerk, Gloria Thompson (46) as Production Control Clerk, Ann Burt (46) as Buyer, Elaine Powers (50) as Insurance Clerk, Faye Sanders (46) as Administrative Assistant Personnel, and Mary Ann Thomason (48) as Personnel Clerk.

### 1.    *Prima Facie Case*

As noted, a plaintiff in a job-reduction case can establish a prima facie case by demonstrating (1) that she was in a protected age group and was adversely affected by an employment decision; (2) that she was qualified for her current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue. *Earley*, 907 F. 2d at 1082.

The first element is not in dispute.  As to the second element, because the plaintiff is not contending that her duties were transferred or assigned to one of the six positions, she cannot meet the criteria of this element by merely showing that she was qualified for her old position. She must show that she was independently qualified for the six positions.

Hallman's evidence regarding her qualifications for the jobs is (1) her testimony that she knew "the flow" of the job or the department it was in, or (2) her opinion that she believes she could have done the jobs. (Hallman Dep. at 133, 142, 144).  For example, she testified with regard to the Buyer job (Ann Burt) that "I had never been a buyer, so I had no experience.  But I feel like my qualifications put me where I could have done the buyer's job." (*Id.* at 142.) She

26

similarly testified with regard to the Insurance Clerk job (Elaine Powers) that "I had never physically done any insurance work, but my qualifications, I feel like I could have done that job." (*Id.* at 143.)

Reynolds has offered no evidence that the six positions required any special or unique talents, unlike Sylvia Kidd's position. Because Hallman had worked in the Personnel Department at the closed Reduction Plant, it could be inferred that she had experience relating to Mary Ann Thomason's Personnel Clerk job or Faye Sanders's Administrative Assistant Personnel job. The court will assume, without deciding, that Hallman was "qualified" for the six positions.

As to the third element, plaintiff must set forth evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue. *Earley*, 907 F. 2d at 1082. As noted, where a job for which the plaintiff is qualified is available at the time of the termination, and the employer offers the job to an individual outside the protected age group, an inference of discrimination is permissible. *Jameson*, 75 F. 3d at 1532.

In this case, however, unlike Sylvia Kidd, all of the employees named by Hallman were over forty years old and within ten years of plaintiff's age. Therefore, there is insufficient evidence on which a fact finder could reasonably conclude that Reynolds intended to discriminate on the basis of age.

27

Consequently, this court finds that plaintiff has not put forth sufficient evidence to satisfy the third element of her prima facie case,[6] and summary judgment on any claims of discrimination as to these six positions is due to be granted.

### 2. *Legitimate, nondiscriminatory reasons*

Even if the plaintiff were able to establish a prima facie case of age discrimination as to these six positions, defendant has met its burden of producing legitimate, nondiscriminatory reasons.

### a. <u>The jobs were unavailable unless other employees were bumped</u>

Reynolds says the six jobs were not "available" because all of them had incumbents who remained incumbents, and displacing or bumping incumbents "is not allowed in salaried RIF's." (Hester Aff. ¶ 12(a).)  Indeed, Hallman testified that "[n]ot at this time, I cannot recollect anyone" who was permitted to displace or bump or take another employee's job in order to avoid layoff. (Hallman Dep. at 145.)

Upon review of the record, the court finds substantial evidence in support of the proffered legitimate, nondiscriminatory reasons.  Two of the six positions could not be regarded as "available."  Rosie McAfee (53 years old) remained in her Storeroom Clerk job at ARP and Gloria Thompson (46) remained in her Production Control Clerk job at ARP.  (Hester Aff. ¶ 12(a).)  Hallman's testimony is in agreement that they remained in place.  (Hallman Dep. at 133, 135.)

---

[6]As noted, it is arguable whether plaintiff meets the second prong of proving that she was qualified for the positions.

Similarly, the other four positions remained substantially the same. Employees were merely transferred to those positions at other plants and Reynolds did not consider the jobs to be open for competition. (Hester Dep. at 33) ("there was a position in the accounting department under the new organization in which she was given consideration for a position. Other than that, I did not have any other open vacancies that consideration could be made."); (Glasscock Dep. at 77) ("Those jobs that had an incumbent in them that was qualified, that incumbent was left in those jobs. The only job we would be discussing that Cecile [Hallman] would have been qualifiable for was the one that Sylvia Kidd filled.").

### b.      Other employees were more qualified

Reynolds contends that the incumbents were more qualified for the post-consolidation positions. For instance, since Ann Burt had been a Buyer for three years, Reynolds contends that she would be the best qualified to retain for the Buyer job at the consolidated Alloys complex.

### 3.      Pretext

#### a.      The jobs were available

Hallman contends that the six positions were available, she should have been considered for them, and therefore defendant's proffered reasons are pretext for discrimination based on her age. The court disagrees.

As to Thompson's and McAfee's positions, there can be no serious dispute that those jobs were unavailable and the prohibition on "bumping" is a legitimate, nondiscriminatory reason for Reynolds to not consider Hallman. *Mitchell v. USBI Co.*, 186 F. 3d 1352, 1356 (11th Cir. 1999) (holding that a prohibition on bumping less senior employees from their positions was not a pretext for unlawful age discrimination).

29

As to the remaining four positions, Hallman contends that while the jobs remained the same in title, the duties and functions were sufficiently different following consolidation as to put them in the status of "available jobs." Hallman takes the position she should have been able to displace or bump any of the six employees "[i]n order to retain my employment if that needed to be done." (Hallman Dep. at 137-138.) Viewing the evidence in a light most favorable to the plaintiff, even if job duties and functions were expanded or changed, there is no evidence of pretext in Reynolds's allowing a prior holder of the job to continue on in that position.

It is as well settled law that "nothing in the ADEA requires that younger employees be fired so that employees in the protected age group can be hired." *Barnes v. Southwest Forest Industries*, 814 F.2d 607, 610 (11th Cir. 1987).[7] That precedent has recently been confirmed in *Mitchell*, 186 F. 3d at 1356 (holding that a prohibition on bumping less senior employees from their positions was not a pretext for unlawful age discrimination).

Thus, the court finds that the placement of other employees in these six positions does not constitute sufficient evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

### b.    "Problem Performers"

Hallman contends that Ann Burt, Rosie McAfee, and Gloria Thompson were documented "problem performers," and their selection to the positions at issue was thus pretext for discrimination based on age.  The court disagrees.

In support of her argument, plaintiff notes Hester's testimony that "problem performers that were documented for poor performance, those people were part of the RIF." (Hester Dep. at

---

[7]As noted above, all six of these employees were in the age group protected by the ADEA.

24.) Hallman uses personnel documents to argue that Burt, McAfee, and Thompson were "problem performers."

Hallman contends Burt was a "problem performer" because (a) she expressed dissatisfaction with her performance appraisal for 1987, (b) she received two "Needs Improvement" ratings (out of a total of seven) on her performance appraisal for 1996, with those areas which needed improvement being "job knowledge/skills" and "initiative," (c) she received criticism regarding her work in 1976, and (d) she was reduced in force in a subsequent RIF in 1998. (Ex. 13 attached to Pl.'s Evid. Sub.)

Hallman contends McAfee was a "problem performer" because she received two "Needs Improvement" ratings on her performance appraisals for 1993 and 1994, with the areas needing improvement in both years being "job knowledge/skills" and "problem solving/decision making." (Ex. 14 attached to Pl.'s Evid. Sub.)

Hallman contends Thompson was a "problem performer" because (a) she commented in her performance appraisal for 1992 that "I had several sick weeks brought on by a days [sic] lay-off that was humiliating and I felt unfair" and (b) she was written up in 1990 for allegedly being discourteous to truck drivers. (Ex. 15 attached to Pl.'s Evid. Sub.)

Even if the court considers all these personnel actions (including those 20 years before the RIF), they fail to constitute evidence that Burt, McAfee, and Thompson were "problem performers." The evidence is that "[t]he different department heads identified if they had a problem performer, and those individuals were identified by their respective department managers." (Hester Dep. at 43-44.) There is no evidence that any department head identified Burt, McAfee or Thompson as a "problem performer."

The court cannot conclude, based on plaintiff's proffered evidence, that Burt, McAfee or Thompson were problem performers for purposes of the RIF. *See Chapman v. American Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988) ("an inference based on speculation and conjecture is not reasonable"). Consequently, the court finds that these alleged blemishes in Burt's, McAfee's, and Thompson's personnel records do not constitute sufficient evidence from which a reasonable fact finder could conclude that Reynolds's legitimate, nondiscriminatory reason was pretext for unlawful discrimination based on age.

### c.    Conclusion

As with the her claim involving Sylvia Kidd, plaintiff is essentially arguing that she should have been chosen for these positions over six other employees. Again, the court finds that plaintiff's evidence, taken separately or collectively,[8] is insufficient evidence from which a reasonable fact finder could conclude that defendant's proffered reasons are pretext for unlawful discrimination based on age.

## D.    The Affirmative Action Contention

In her opposition, plaintiff argues that Reynolds violated its affirmative action plan ("AAP" or "the Plan"). Plaintiff appears to be contending some separate violation of the law based on Reynolds's failure to follow the plan.

First, there is no count in the Complaint regarding such a violation. Second, the Eleventh Circuit has stated that "the failure to give a preference under such a[n] [affirmative action] plan cannot be used to support an allegation of discrimination in employment decisions." *Liao v.*

---

[8]Several of the arguments of pretext rejected in the Sylvia Kidd analysis would apply to this claim as well.

32

*Tennessee Valley Authority*, 867 F.2d 1366, 1369 (11th Cir. 1989); *Ferguson v. Veterans Administration*, 723 F.2d 871, 872 (11th Cir. 1984) ("there is no Title VII cause of action for the failure to implement or utilize an affirmative action program."). "The ADEA mandates that an employer reach employment decisions without regard to age, but it does not place an affirmative duty upon an employer to accord special treatment to members of the protected age group." *Williams v. General Motors Corp.*, 656 F.2d at 129.

Consequently, plaintiff's argument with respect to Reynolds's AAP is without merit.

### III. CONCLUSION

Based on the foregoing, the court finds that defendant's Motion for Summary Judgment and Motion to Reinstate Paragraph 18 of Affidavit are due to be granted. Based on the reasons set forth in defendant's Response to plaintiff's Motion to Strike, the court finds that plaintiff's Motion to Strike Supplemental Out of Time Submissions is due to be denied.

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this *10th* day of March, 2000.

SHARON LOVELACE BLACKBURN
United States District Judge